CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
MAR 2 0 2017
JULIA C. DUDLEY, CLERK
BY /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

MIKIALA A. WHITACRE, Executor of )
the Estate of Joy Anne Thomas, deceased, )
)  Civil Action No. 3:15CV00030
    Plaintiff, )
)  **MEMORANDUM OPINION**
v. )
)  Hon. Glen E. Conrad
ROBERT H. THIELE, M.D., )  Chief United States District Judge
)
    Defendant. )

Joy Anne Thomas, a West Virginia resident, underwent aortic valve replacement surgery at the University of Virginia Medical Center ("Medical Center") in January of 2013. Following the procedure, Thomas was transferred to the Medical Center's Thoracic Cardiovascular Post-Operative ("TCV-PO") Unit. A few hours after her arrival, Thomas underwent emergency surgery. She died several days later due to neurological complications.

Mikiala A. Whitacre, the executor of Thomas' estate, brought this medical malpractice action against Robert H. Thiele, M.D., the attending physician responsible for intubating Thomas prior to the emergency surgery. Whitacre claims that Dr. Thiele acted negligently in performing the intubation, and that Dr. Thiele's negligence was the proximate cause of Thomas' death. Dr. Thiele has moved for summary judgment on the basis of sovereign immunity. For the reasons set forth below, the court will deny Dr. Thiele's motion.

## Background

The following facts are either undisputed or presented in the light most favorable to the plaintiff. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013).

Dr. Thiele is board certified in anesthesiology, critical care, and advanced perioperative transesophageal echocardiography.[1] He is employed by both the University of Virginia School of Medicine ("Medical School") and the University of Virginia Physicians Group ("Physicians Group"), a nonprofit corporation organized to coordinate and deliver patient care at the Medical Center. As a member of the faculty of the Medical School, Dr. Thiele's "primary responsibility is to engage in the academic pursuits of teaching, research, and other scholarly activities." Employment Agreement at 1, Docket Nos. 26-1 & 58-7. As an employee of the Physicians Group, Dr. Thiele assists the corporation in "its furnishing of professional health care services to patients in the . . . Medical Center and in affiliated hospitals and clinics." Id. "Notwithstanding such employment," Dr. Thiele remains free to exercise his own judgment as to the "appropriate healthcare to be rendered [to a] patient." Id.; see also Tr. of 11/29/2016 Dep. of Dr. Thiele at 14, Docket No. 58-2 ("I provide care working as a UPG [Physicians Group] clinician based on what I believe is in the best interests of the patient.").

The Physicians Group holds itself out as a supporting organization distinct from the University of Virginia and the Medical Center.[2] The business and affairs of the Physicians Group are managed by a board of directors. The Physicians Group also has its own chief officers, and it maintains a separate human resources department. The Physicians Group bills patients directly for treatment provided by its physicians. The physicians' salaries consist of two components: a base salary paid by the Medical School and an additional variable salary paid from revenue

---

[1] The court takes judicial notice of information publicly available on the website maintained by the University of Virginia Health System.

[2] See http://www.upg.virginia.edu/aboutus (last visited March 20, 2017).

2

generated by the Physicians Group.[3] The physicians are also provided professional liability coverage through the Piedmont Liability Trust.

The Physicians Group was previously known as the University of Virginia Health Services Foundation ("Foundation"). The Foundation was created in 1979. On December 31, 1981, the Foundation entered into the second phase of an affiliation agreement with the Rector and Visitors of the University of Virginia ("University"), which delineated the responsibilities of the Foundation and the University. The contracting parties agreed, among other things, that the Foundation would "provide primary and consulting patient care services to Medical Center patients, . . . and to patients at such other locations as may be agreed to from time to time by the Foundation and the University," and that the University would "grant to the Foundation the right to use certain University premises . . . and the equipment located therein" at an agreed-upon cost. Affiliation Agreement at 5-7, Docket No. 26-2. The contracting parties also agreed that physicians would be employed by both the University and the Foundation, and that part of a physician's compensation would be derived from his employment by the Foundation. They further agreed that the University would have "no liability or responsibility whatsoever with respect to the conduct and operation of the activities to be conducted by the Foundation in the assigned space," and that the Foundation would "indemnify and hold the University harmless against . . . any injury to or death of any person, that may be caused by or arise out of . . . the conduct or operation of the Foundation's activities [or] any act of any agent . . . of the Foundation in or about the assigned space[.]" Id. at 11-12.

---

[3] According to the plaintiff, three-fifths of Dr. Thiele's salary is paid from revenue generated by the Physicians Group.

3

Effective August 1, 2011, the Foundation changed its name to the Physicians Group. Pursuant to the Amended and Restated Bylaws of the Clinical Staff of the University of Virginia Medical Center, which were revised on May 21, 2012, Dr. Thiele and other physicians employed by the Physicians Group are granted privileges as members of the clinical staff of the Medical Center. Clinical staff members are required to supervise residents participating in the University's Graduate Medical Education program. They are also required to abide by the Clinical Staff Bylaws, the Medical Center Policy Manual, and all other Medical Center policies, rules, and regulations applicable to clinical staff members. However, agreements between the Physicians Group and the Medical Center expressly provide that "the Physicians Group and its physician employees are 'independent contractors' with respect to the Medical Center," that there is no "employer/employee relationship," and that "the Medical Center does not control the professional judgment of the Physicians Group or its physician employees." Pl.'s Supp'l Ex. D at 3, Docket No. 58-4.

Joy Anne Thomas was referred to the University of Virginia Heart and Vascular Center ("Heart and Vascular Center") by a physician in Winchester, Virginia. She was accepted as a privately insured patient by John A. Kern, M.D., an employee of the Physicians Group who practices at the Heart and Vascular Center. Thomas underwent aortic valve replacement surgery on January 25, 2013.

Following the surgery, Thomas was transferred to the TCV-PO Unit. At the time of her transfer, Dr. Thiele was working in the TCV-PO Unit as the attending intensivist.[4] He was assigned to work in that unit by J. Michael Jaeger, M.D., another member of the Physicians Group.

---

[4] An intensivist is also known as a "critical-care doctor." Bhan v. Battle Creek Health Sys., 579 F. App'x 438, 440 (6th Cir. 2014).

4

As the attending intensivist, Dr. Thiele did not have the discretion to decline to assist Thomas when her condition declined and she required emergency treatment. Dr. Thiele utilized the equipment provided by the Medical Center to intubate Thomas and monitor the intubation. He was not assisted by any residents.

Thomas died on February 1, 2013. Her death certificate identifies the cause of death as "anoxic brain injury" due to "esophageal intubation." Compl. at ¶ 20, Docket No. 1.

## Procedural History

On July 30, 2013, Olan Thomas, the original executor of Thomas' estate, filed a medical malpractice action against Dr. Thiele in the Circuit Court for the City of Charlottesville. Thereafter, Mikiala Whitacre was substituted as personal representative of the estate. The action was ultimately nonsuited prior to trial.

Whitacre commenced the instant action on June 26, 2015. Three weeks before the close of discovery, defense counsel advised plaintiff's counsel that Dr. Thiele intended to raise the defense of sovereign immunity, based on the Supreme Court of Virginia's recent decision in Pike v. Hagaman, 787 S.E.2d 89 (Va. 2016). Prior to that time, the defense had not been raised.

Dr. Thiele subsequently moved for summary judgment on the basis of sovereign immunity. In opposing the motion, Whitacre argued that she had not had adequate time to conduct discovery relevant to the defense. The court held a hearing on the motion for summary judgment on August 22, 2016. In a subsequent order entered on September 1, 2016, the court took the motion under advisement, and gave the parties until December 1, 2016 to conduct additional discovery on the issue of sovereign immunity. Following the conduct of additional discovery, the parties filed supplemental briefs in support of their respective positions. The matter is now ripe for review.

5

## Standard of Review

Rule 56 of the Federal Rules of Civil Procedure permits a party to move for summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether to grant a summary judgment motion, the court must view the record in the light most favorable to the non-moving party, and draw all reasonable inferences in her favor. Anderson, 477 U.S. at 255; Libertarian Party of Va., 718 F.3d at 312.

## Discussion

In moving for summary judgment, Dr. Thiele maintains that Virginia's doctrine of sovereign immunity protects him from liability for the alleged acts of negligence.[5] In response, the plaintiff argues that Dr. Thiele was not acting as an employee of the Commonwealth at the time he treated Thomas, and, thus, that he is excluded from the protection of sovereign immunity. For the following reasons, the court concludes that genuine issues of material fact exist regarding the nature and scope of Dr. Thiele's employment, and that these factual disputes preclude the entry of summary judgment in Dr. Thiele's favor.

In Virginia, the doctrine of sovereign immunity remains "'alive and well.'" Gray v. Va. Sec'y of Transp., 662 S.E.2d 66, 70 (Va. 2008) (quoting Messina v. Burden, 321 S.E.2d 657, 660 (Va. 1984)). The doctrine "is 'a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities.'" Id. (quoting Hinchey v. Ogden, 307 S.E.2d 891,

---

[5] Because this federal action is based upon diversity of citizenship, the court must apply the substantive law of the forum state, including its choice of law rules. Limbach Co., LLC v. Zurich Am. Ins. Co., 396 F.3d 358, 361 (4th Cir. 2005). The parties agree that Virginia law governs the negligence claim asserted by the plaintiff.

6

894 (Va. 1983)). In order for the purposes of the doctrine to be fully realized, the immunity afforded by the doctrine is not limited solely to the state. Atkinson v. Sachno, 541 S.E.2d 902, 904 (Va. 2001). The doctrine also applies to "some people who help run the government . . . for the state can only act through individuals." Messina, 321 S.E.2d at 661.

"The determination that a particular individual is entitled to the protection of sovereign immunity frequently involves unique factual considerations when that individual is a physician." Atkinson, 541 S.E.2d at 904 (citations omitted). In James v. Jane, 282 S.E.2d 864 (Va. 1980), the Supreme Court of Virginia "established a four-part test to determine whether a physician who was an employee of the Commonwealth was entitled to the protection of sovereign immunity." Id. (citing James, 541 S.E.2d at 869). Since James was decided, the Supreme Court has applied that test in a number of medical malpractice cases, including Pike v. Hagaman, the primary decision on which Dr. Thiele relies. In Pike, the Supreme Court concluded, based on its assessment of the four James factors, that a registered nurse employed by the Virginia Commonwealth University Health System Authority, an instrumentality of the state, was entitled to sovereign immunity. Pike, 787 S.E.2d at 94; see also id. at 91, 94 (noting that the state hospital paid all of Hagaman's wages, and determined her schedule and whether she could take leave); Va. Code § 23.1-2401(A) ("The Virginia Commonwealth University Health System Authority is established as a public body corporate, public instrumentality, and political subdivision of the Commonwealth . . . .").

In each of the briefs filed in support of the pending motion, Dr. Thiele proceeds under the assumption that the James test governs his plea of sovereign immunity. However, because Dr. Thiele maintains dual employment with the Medical School and the Physicians Group, the court must first address the issue of whether he was an employee of the Commonwealth who was

7

operating within the scope of his state employment in performing the acts complained of by the plaintiff. The Supreme Court of Virginia has made clear that the "[a]pplication of the James test . . . presupposes that the physician seeking the protection of sovereign immunity is an employee or agent of the Commonwealth." Atkinson, 541 S.E.2d at 904-05. Stated differently, the test "is not applicable if the individual is an independent contractor and, thus, not an employee or agent of the Commonwealth." Id.; see also McCloskey v. Kane, 604 S.E.2d 59, 62 & n.2 (Va. 2004) (assuming, without deciding, that the defendant-physician was an employee of the Commonwealth but nonetheless holding that he was not entitled to sovereign immunity under the James test). This is because "all independent contractors are excluded" from the protection of sovereign immunity, Atkinson, 541 S.E.2d at 905, as is conduct undertaken outside the scope of state employment. Tomlin v. McKenzie, 468 S.E.2d 882, 885 (Va. 1996); see also Messina, 321 S.E.2d at 660 ("[I]n applying the James test, the first question is whether Johnson works for an immune body.").

Accordingly, the first issue that must be decided is whether Dr. Thiele was acting as an employee of the state at the time he treated Thomas. The resolution of this question is generally a question of fact for a jury. Atkinson, 541 S.E.2d at 905. It can be decided as a matter of law only "when 'the evidence admits of but one conclusion.'" Id. (quoting Hadeed v. Medic-24, Ltd., 377 S.E.2d 589, 594-95 (Va. 1989)). Based on the current record, the court is unable to conclude that this case presents such a question of law, much less one that can be decided in Dr. Thiele's favor at this stage of the proceedings.

As summarized above, Dr. Thiele is, and was at all relevant times, employed by both the Medical School and the Physicians Group, the latter of which provides patient care services to Medical Center patients. It is undisputed that the Medical School and the Medical Center are

8

Case 3:15-cv-00030-GEC Document 62 Filed 03/20/17 Page 8 of 14 Pageid#: 1120

agencies of the Commonwealth. See Rector & Visitors of the Univ. of Va. v. Carter, 591 S.E.2d 76, 78 (Va. 2004) ("As an agency of the Commonwealth, UVA is entitled to sovereign immunity under the common law absent an express constitutional or statutory provision to the contrary."); Va. Code § 23.1-2212(B) (designating the Medical Center as "an agency of the Commonwealth"). While Dr. Thiele summarily argues that the Physicians Group is also entitled to share in the state's immunity,[6] a reasonable jury could find that the Physicians Group and its employees are independent contractors for which the doctrine of sovereign immunity is unavailable. Likewise, a reasonable jury could find that Dr. Thiele's alleged acts of negligence were performed outside the scope of his employment with the Medical School. Until these underlying factual disputes are resolved, the court is unable to determine whether Dr. Thiele is entitled to sovereign immunity under James v. Jane.[7]

Turning first to the relationship between the Physicians Group and the Commonwealth, the Supreme Court of Virginia has identified four factors relevant to the determination of whether the relationship is one of an agent or an independent contractor. Those factors are: (1) "selection and engagement"; (2) "payment of compensation"; (3) "power of dismissal"; and (4) "power to control the work." Atkinson, 541 S.E.2d at 905. "It is well established that the fourth factor, the power of control, is determinative." Id.

---

[6] See Def.'s Br. in Response to Pl.'s Supp'l Br. 2, Docket No. 61 ("[T]he UVA Medical Center, UVA itself and UPG [the Physicians Group] are all immune agencies, so Plaintiff's efforts to confuse Defendant's employment are irrelevant to his entitlement to sovereign immunity. UVA is the Commonwealth. The UVA Medical Center is the Commonwealth. UPG is the Commonwealth.") (emphasis omitted).

[7] The court notes that whether a defendant is protected by sovereign immunity is a "question of law." Commonwealth ex rel. Fair Hous. Bd. v. Windsor Plaza Condo. Ass'n, 768 S.E.2d 79, 89 (Va. 2014). However, the defense presents "distinct issues of fact," which must be proven by the party asserting the defense. Pike, 787 S.E.2d at 92 (citation and internal quotation marks omitted).

9

Viewing the record in the light most favorable to the plaintiff, the court concludes that the evidence raises a triable issue of fact as to whether the Physicians Group is an agent or employee of the Commonwealth, as opposed to an independent contractor. The Physicians Group is a separate and distinct corporation, which employs the physicians who work at the Medical Center. Although technically a nonprofit organization, it is undisputed that the Physicians Group generates extensive revenue that is used, at least in part, to compensate its employees. See Univ. of Va. Health Servs. Found. v. Morris, 657 S.E.2d 512, 522 (Va. 2008) (holding that the Foundation "operates like a profitable commercial business with extensive revenue and assets" and, thus, is "not immune from tort liability under the doctrine of charitable immunity"). Moreover, like any other corporation, the business and affairs of the Physicians Group are managed by a board of directors, and the organization has its own chief officers.

In his various briefs, Dr. Thiele makes much of the fact that physicians employed by the Physicians Group are required to follow policies and procedures established by the Medical Center. Existing precedent makes clear, however, that this fact is not dispositive, particularly in the case of physicians who must exercise their own professional judgment when treating patients. For instance, in Atkinson, the Supreme Court of Virginia considered whether a licensed physician who contracted with a state agency to serve as a consultant physician was an employee or agent of the Commonwealth. Atkinson, 541 S.E.2d at 902. Although the physician was required to adhere to "numerous regulations, protocols, and procedures" in performing the examinations and tests sought by the agency, the Court found that they did not constitute control by the state agency of the means and methods by which the physician performed the examinations and tests. Id. at 906. Instead, the record established that the physician exercised his own "professional judgment in making the medical assessments of a particular claimant's condition in order to accurately

10

produce the report requested by [the agency]." Id. The Court ultimately held, as a matter of law, that the physician was an independent contractor, and not an employee or agent of the Commonwealth. Id.

Similarly, in Ogunde v. Prison Health Services, Inc., 645 S.E.2d 520 (Va. 2007), the Supreme Court of Virginia held, as a matter of law, that a company that contracted with the Virginia Department of Corrections ("VDOC") to provide medical services to inmates at state correctional centers was an independent contractor, rather than VDOC's agent, and therefore not entitled to sovereign immunity. Ogunde, 645 S.E.2d at 525. In reaching its decision, the Court emphasized that although the corporation and its employees were required to render medical services in accordance with policies formulated by VDOC, "the actual work to be performed under the contract – the rendering of medical services to inmates – remain[ed] under the control of [the company]." Id. at 524.

In this case, as in Atkinson and Ogunde, a reasonable jury could easily find that the provision of patient care services at the Medical Center remains under the control of the Physicians Group, and that its physicians exercise their own professional judgment in treating the Medical Center's patients. Indeed, agreements between the Physicians Group and the Medical Center expressly provide that "the Physicians Group and its physician employees are 'independent contractors' with respect to the Medical Center," and that "the Medical Center does not control the professional judgment of the Physicians Group or its physician employees." Pl.'s Supp'l Ex. D at 3; see also Tr. of 11/29/2016 Dep. of Dr. Thiele at 14 ("I provide care working as a UPG [Physicians Group] clinician based on what I believe is in the best interests of the patient."). Along the same lines, the affiliation agreement between the University and the Physician Group's predecessor expressly provides that the corporation is responsible for providing patient care

11

services to patients of the Medical Center, and that the University "shall have no liability or responsibility whatsoever with respect to the conduct and operation of the activities to be conducted by the [corporation] in the assigned space." Affiliation Agreement at 11-12. On this record, a jury could reasonably find that the Physicians Group and its employees are independent contractors, and not agents of the Medical Center or the University. Accordingly, at this stage of the proceedings, the court is unable to accept Dr. Thiele's argument that the Physicians Group "is the Commonwealth."

The court must also reject Dr. Thiele's argument that his employment with the Medical School entitles him to sovereign immunity as a matter of law. The mere fact that one of Dr. Thiele's employers is a state agency is not dispositive. The record must also establish that he was operating within the scope of his state employment in performing the acts complained of by the plaintiff. See Tomlin, 468 S.E.2d at 885 (noting that conduct outside the scope of state employment is not protected by sovereign immunity).

The court finds the Supreme Court of Virginia's decision in Benjamin v. University Internal Medicine Foundation, 492 S.E.2d 651 (Va. 1997) instructive on this point. In that case, a female patient died after receiving treatment at Medical College of Virginia ("MCV") Hospital's Episodic Care Clinic ("ECC"). Benjamin, 492 S.E.2d at 651. The administrator of the patient's estate filed suit against Julie Ann Samuels, M.D., the medical director of the "ECC," and the University Internal Medicine Foundation ("UIMF"), a nonprofit corporation organized for the private practice of medicine by faculty in MCV's Internal Medicine Department. Id. at 651, 653. Dr. Samuels filed a plea of sovereign immunity, which was sustained by the trial court. In affirming the trial court's decision, the Supreme Court found that the record supported the determination that Dr. Samuels was acting for the state in administering the ECC, and that the

12

clinic was a state-run health facility. Id. at 653. Although Dr. Samuels was also a member of UIMF and was paid for her services to private patients by the corporation, the plaintiff failed to present sufficient evidence to establish that the corporation had a connection or contract with the ECC, or that Dr. Samuels was acting as an agent for UIMF in her capacity as the ECC's medical director. Id. at 653-54. Accordingly, the Supreme Court affirmed the trial court's determination that "Dr. Samuels was an administrative agent for a state institution, exercising substantial discretion in carrying out her administrative duties, and was, therefore, entitled to sovereign immunity."[8] Id. at 653.

Unlike Benjamin, the record in this case contains ample evidence from which a reasonable jury could find that Dr. Thiele was acting on behalf of the Physicians Group, rather than the Medical School, when he performed the intubation on Thomas. As a member of the faculty of the Medical School, Dr. Thiele's "primary responsibility is to engage in the academic pursuits of teaching, research, and other scholarly activities." Employment Agreement at 1. The current record is devoid of any indication that Dr. Thiele was engaged in such pursuits during the time period in question. Nor is there any evidence that Dr. Thiele was responsible for supervising medical residents at that time. Instead, a reasonable jury could find that Dr. Thiele was assisting the Physicians Group in "its furnishing of professional health care services to patients in the . . . Medical Center." Id. Dr. Thiele was assigned to work as the attending intensivist in the TCV-PO Unit by another member of the Physicians Group, and his compensation was based, at least in part, on the revenue that the Physicians Group generated from services rendered by its physicians. In short, the evidence in the summary judgment record is sufficient to create a triable

---

[8] The Supreme Court also affirmed the trial court's grant of summary judgment to UIMF. The trial court agreed with UIMF that Dr. Samuels was not acting as an agent, servant, or employee of UIMF at the time of the patient's treatment in the ECC, and, thus, that UIMF was not subject to vicarious liability. Benjamin, 492 S.E.2d at 652, 654. Notably, the Supreme Court's decision is devoid of any suggestion that the nonprofit corporation was entitled to sovereign immunity.

13

issue as to whether Dr. Thiele was operating within the scope of his state employment at the time he performed the acts complained of by the plaintiff.

## Conclusion

For the reasons stated, genuine issues of material fact preclude the entry of summary judgment in favor of Dr. Thiele on the basis of sovereign immunity. Accordingly, the court will deny Dr. Thiele's motion for summary judgment.

The Clerk is directed to send copies of this memorandum opinion and the accompanying order to all counsel of record.

DATED: This 20th day of March, 2017.

_____
Chief United States District Judge